UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
VIOLATION NO. 60133355

UNITED STATES OF AMERICA                                      PLAINTIFF

V.

JIMMY BARNETT                                                DEFENDANT

MEMORANDUM OPINION
AND ORDER

This matter involves a petty offense charge lodged against Defendant Jimmy Barnett for

violation of 36 C.F.R. § 2.16(c) which prohibits horseback riding on park vehicular roadways.

Barnett entered a plea of not guilty to the charge and filed a motion to dismiss the citation.  The

United States filed a response and Barnett filed a reply.  Oral argument was held in the case on

November 13, 2019, at which Assistant United States Attorney Madison Sewell represented the

United States and Stephen B. Pence represented Barnett.  Having reviewed the pleadings and

exhibits submitted by the parties and heard argument of counsel, the undersigned adjudicates

Barnett to be guilty of the offense.

Nature of the Offense

The regulation in question prohibits "the use of horses or pack animals on a park road,

except: (1) Where such travel is necessary to cross to or from designated trails, or areas, or

privately owned property, and no alternative trails or routes have been designated; or (2) when the

road has been closed to motor vehicles."  36 C.F.R. §12.6(c).[1]  On May 4, 2019 a Park Ranger

---

[1] The citation issued to Barnett references 36 C.F.R. §1.5 which deals with violation of closure orders, however the parties appear to agree that § 12.6(c) is the appropriate violation.

patrolling within the Mammoth Cave National Park observed Barnett riding a horse on Houchin's Ferry Road.[2] The Road is not designated for horseback use and signs at both ends of the road near horse trailheads advise "no horses beyond this point." The Ranger issued a citation to Barnett for riding a horse off a designated route.

Barnett's Challenge to the Charge

Barnett does not dispute that he was riding a horse on Houchin's Ferry Road and that doing so was a violation of the regulation. He does not claim that one of the exceptions to the prohibition apply. He contends, however, that the United States is estopped from applying the regulation to Houchin's Ferry Road because of a limiting condition in the order of condemnation and deed by which the United States obtained ownership of the road in 1945 and which required the road remain open for the "usual use by the public." He further contends that the "usual use by the public" in 1945 included horseback travel over the road and utilization of the then-operating ferry. Consequently, Barnett asserts that the United States cannot forbid horseback travel on Houchin's Ferry Road and application of the regulation in this instance is invalid. Evaluating Barnett's argument requires an examination of Mammoth Cave National Park's acquisition of Houchin's Ferry Road.

Condemnation of Houchin's Ferry Road

Mammoth Cave National Park was established on July 1, 1941. In 1942 the United States filed a Petition in Condemnation in this Court, seeking to acquire various public roadways located in Edmonson, Hart, and Barren Counties which were also within the confines of Mammoth Cave National Park (Govt. Ex. 9).[3] "Houchin Ferry-Mammoth Cave Road" was twice identified as one

---

[2] The case documents variously refer to the road is question as "Houchin Ferry," "Houchins Ferry" and "Houchin's Ferry." The undersigned will refer to the road as "Houchin's Ferry Road."

[3] Barnett has not challenged the authenticity of United States' exhibits attached to its response to his motion to dismiss.

of the roads included in the condemnation action.  The petition specified that several of the roads, including Houchin's Ferry, were to remain "open for the usual use by the public" (Id.).  The petition was amended four times during the litigation to adjust the roadways subject to condemnation, but Houchin's Ferry Road remained among the roads to remain "open for the usual use by the public" (Govt. Ex. 10).

A Commission was appointed in the case and awarded the counties the sum of $3,673.50 for 39 roadways subject to condemnation.  The parties took exception to the award and in February 1945 the Court conducted a jury trial to assess the damages to be awarded to the counties. Following a jury verdict, the Court entered a Final and Deficiency Judgement in Condemnation awarding each of the counties and the Commonwealth of Kentucky $1.00 each for their interests (Govt. Ex. 23).  The judgment vested ownership of the roads in the United States "subject, however, to and conditioned upon [certain roads, including Houchin's Ferry] . . . remaining open for the usual use by the public" (Id.).  This same condition was reflected in the deed conveying formal ownership to the United States (Govt. Ex. 12).

### Barnett's Argument

Barnett concedes that the U.S. Constitution's Property Clause vests Congress with the power to regulate federal lands and he does not challenge the federal government's power to regulate the use of land within Mammoth Cave National Park.  Barnett further concedes that Congress may delegate rule-making authority to deferral agencies such as the National Park Service. He agrees that 36 C.F.R. §2.16(c) is facially valid and that the National Park Service may regulate horseback riding in national parks, including Mammoth Cave.

Barnett's challenge to the regulation lies in its application to horseback riding on Houchin's Ferry Road.  Citing National Park Service documents recounting that Houchin's Ferry was used

to transport horses and wagons, Barnett asserts that, at the time the United States acquired title to Houchin's Ferry Road, travel by horseback on the road was part of the public's usual use and, as such, the United States is precluded from prohibiting horseback riding on the road.

Barnett cites Herr v. United States Forest Service, 865 F.3d 3541 (6th Cir. 2017) in support of his argument. Herr involved the use of boats on Crooked Lake, which was almost entirely surrounded by a federal wilderness area. A small portion of the shore, however, remained in private ownership and the owner of the property adjoining the lake challenged regulations limiting the use of powerboats on the lake. The court recognized that the plaintiffs had littoral rights under Michigan law which allowed them "reasonable use" of the lake's surface waters. The Court also held that regulations affecting the use of the lake's surface water were subject to the plaintiff's existing rights and the Forest Service could not unilaterally determine what constituted "reasonable use" of the lake.

Barnett analogizes the Herr plaintiff's "valid existing rights" to the use of the lake with the judgment and deed restriction requiring that the road remain open for the "usual use of the public" and contends the National Park Service cannot unilaterally determine what is the "usual use." Because the "usual use" of the road included horseback riding when the judgment and deed were entered, Barnett argues that the public has a non-divestible right to use the road for horseback riding today.

### The United States' Response

The United States notes that when the Park was established in 1941, Park visitors were prohibited from riding horses on roads within the park. The regulation in effect at that time, 36 C.F.R. § 2.36, stated "[h]orseback travel over automobile roads is prohibited except where such travel is necessary to ingress to and egress from privately owned property in the parks or

4

monuments, or incidental to authorized trail trips." When the United States exercised its power to acquire the state and county owned roadways within the Park through the condemnation action, neither the Commonwealth nor the counties challenged the United States' authority to do so, leaving only the question of compensation for resolution by the Court. The United States points out that "the land surface that the roads traveled over was already titled to the United States, so the condemnation action addressed only the easements and other similar property interests that the Commonwealth and the counties still had in the roads." The United States contends that the conveyance of title to the roads extinguished any right or interest held by the Commonwealth or counties.

Even if the condition in the Judgment and Deed that the road remain open "for the usual use by the public" constitutes a property right retained by the Commonwealth and counties, the United States argues the right only includes a general right of ingress and egress and does not specify the manner in which ingress and egress may be accomplished. This is because when the roads were deeded to the United States, they were already subject to the general regulatory prohibition against riding horses on automobile roads. The United States points to the efforts of the owners of Onyx Cave to intervene in the condemnation action, requesting damages for what they feared would be damage to their business (Govt. Ex. 24 & 25). The United States responded at the time that the owners would not be deprived of a means of ingress and egress to their property and the Court denied the motion to intervene thus demonstrating, the United States contends, a recognition from the Court that access, and not mode of transportation, was the focus of the condemnation action. Further, the United States points to the jury instructions which asked the jury to consider whether the taking of the roads would deprive landowners a "reasonable and practical means of access to and from their properties" (Govt. Ex. 11).

As an additional argument, the United States asserts that a petty offense adjudication is not the proper means of determining if the Commonwealth or county own an easement across United States land, which must be brought under the Quite Title Act, 28 U.S.C. §2409a. Neither the Commonwealth nor the counties have claimed such an easement or right of way and, the United States argues, Barnett has no basis upon which to claim a right to ride a horse on the road. The United States likens the situation to that in United States v. Wells, 873 F.3d 1241 (10th Cir. 2017). In that case the Bureau of Land Management (BLM) closed an area to all-terrain vehicles. Wells was charged with riding an ATV in violation of the closure order. Wells contended that the United States had committed a Brady violation by failing to disclose a map showing a right-of-way which would have prevented the BLM from closing the access route. The court in that case held that the Quite Title Act was the exclusive means of challenging the United States' right to property and that an individual member of the public did not have a cognizable claim to public roads.

In response to Barnett's reliance upon Herr, which protected a landowner's right to use of a lake, the United States notes that Herr dealt with a property owner's rights and that Barnett has no corresponding right of ownership in the road.

### Barnett's Reply

Barnett notes that he is not asserting a property right to use the road for horseback riding. He contends, however, that he does have a right to challenge whether the regulation prohibiting horseback riding on Houchin's Ferry Road is voided by the judgment and deed provisions that the road remain open for the public's usual use. He contends that the United States' interpretation of "usual use" as referring to ingress and egress alone is erroneous, pointing to the use of the term "public" rather than "landowners" or "adjoining property."

6

As to the United States' contention that the question should more appropriately be addressed by a Quiet Title Act action, Barnett asserts that this would not be the appropriate means precisely because he is not asserting a property right and, as a private citizen, would have no standing to prosecute such an action.

Ruling

As a threshold matter, the United States has challenged whether Barnett is entitled to challenge the enforceability of the regulation considering the court's decision in <u>Wells</u>, *supra*. In fact, <u>Wells</u> did not hold that the defendant could not challenge the enforceability of the closure order. The court observed that the question of whether the defendant had "standing" to bring a Quiet Title Act was irrelevant in the case. The Court assumed, without deciding, that the defendant was entitled to assert a defense challenging the enforceability of the closure order, thereby bypassing "the constitutional question of whether Defendants-Appellants' due process rights would be violated if they are prevented from mounting a [right-of-way] defense to their criminal charges." <u>Id.</u> at 1262.

The undersigned finds the following reasoning persuasive:

> "In general, a defendant in a civil or criminal proceeding brought to enforce an administrative order or regulation may defend on the ground of invalidity of the order or regulation, in absence of affirmative legislative intent to the contrary. The natural assumption is that one may not be held civilly or criminally liable for violating an invalid order or regulation. The tradition is deeply embedded that even statutes may be challenged by resisting enforcement."

<u>Bobby v. Alaska</u>, 718 F. Supp. 764, 786-87 (D. Alaska 1989) (*quoting* K.C. Davis, *Administrative Law Text* § 23.05 at 446-447 (footnotes omitted)).

Attention must turn next to the meaning of the judgment and deed restriction that the road must "remain open for the usual use by the public." In this regard, the undersigned concurs with

7

the United States that the phrase "usual use" is directed to the purpose of travel and not the means whereby it is accomplished.

The Court's instructions to the jury in the condemnation action clearly explained the task at hand. With the parties having taken exception to the Report of the Commissioners appointed to recommend compensation, the Court advised the jury "it is now submitted to you to determine the amount of just compensation to be paid for this acquisition (Govt. Ex. 11). The Court explained to the jury that the United States was already the owner of the land surrounding the roads and that roads, unlike farm land, are not ordinarily subject to sale and do not have a market value. Rather the "holder of the easement in these roads and highways is entitled only to the value of a substitute easement, if one is necessary to take the place of the easement acquired" (Id.). The jury was instructed that the question it was to answer was whether, given that certain roads were designated to remain open for the usual use of the public, "leave to the residents of the areas immediately outside the boundaries of the Mammoth Cave National Park and adjacent thereto a reasonable and practical means of access to and from their properties to their county seat, postoffice [*sic*], courthouse, markets, schools and churches" (Id.). The Court further instructed the jury that an adjacent landowner was only entitled to one reasonable means of access to and from their property and, if the roads designated as remaining open for the usual use by the public provided such access, the landowner could not complain that the distance was thus made further than before. If the jury believed that the existing roads remaining open were sufficient to provide access without constructing new access roads, then the jury was instructed to award only nominal damages of $1.00 to each defendant. If, on the other hand, the jury found some property owners and residents living immediately outside the Park would be deprived of access, then the jury was to award the

reasonable cost of building new roads to provide access (Id.). The jury found the roads designated to remain open provided adequate access and awarded nominal damages (Govt. Ex. 12).

When the United States instituted the condemnation action in 1942, it specified in the petition that some, but not all, of the roads would remain "open for the usual use by the public" (Govt. Ex. 9). A review of the amended petitions filed by the United States demonstrates an ongoing refinement of the scope of the roads to be acquired and which would be remain "open for the usual use by the public" (*See* Govt. Ex. 10). Why did the United States make the distinction that some, but not all, of the roads would remain open? The purpose of the condemnation action was not only to obtain the transfer of title from the Commonwealth and counties to the United States. The companion purpose of the action was to determine the fair compensation for the taking. Consequently, it was necessary for the United States to specify which roads would remain open for public use so that the jury could determine if any landowners or residents living immediately outside the boundaries of the Park would be deprived of access. Tellingly, in the Fifth Amended Petition in Condemnation, the United States specified that *one of its own* roads would remain open for the usual use of the public (Id.). Clearly, the United States was designating the interconnecting road system which would remain available for public use so that the jury might make the necessary findings. In the judgment which followed the jury's verdict, the judgment reflects which of the roads will remain open, including the one owned by the United States, even though there was no reason to reference that road insofar as transfer of title was concerned (Govt. Ex. 23). The designation that it was to remain open was to ensure the contiguity of the access route. Nowhere in the condemnation action can any mention be found as to the means of locomotion over the roads, be it by automobile, horseback or on foot. The only circumstantial reference lies in the instruction in which the jury was advised to consider "the location and character of the roads

9

condemned, the amount and character of travel over them and whether passable at all seasons of the year" but this is only for the purpose of determining if the road left open is at least as good as the road closed (Govt. Ex. 11).

## Judgment

The Defendant does not contest that he was riding a horse on a park road and that in doing so he violated 36 C.F.R. §12.6(c). He has asserted as a defense that the regulation is unenforceable. The undersigned concludes that the regulation is enforceable in this instance. As such, the undersigned adjudicates the Defendant to be **GUILTY** of the offense and imposes a **monetary fine in the sum of $100.00**. The Defendant shall additionally pay **administrative fees in the sum of $40.00**. Should the Defendant believe that this conviction or penalty imposed are unlawful or violate a constitutional right, the **Defendant may file an appeal with the District Judge within 14 days of the date of this judgment**. Fed. R. Crim. P. 58(g)(2)(B).

## Epilogue

There is a backdrop to this action. Mammoth Cave Horse Camp is a private business located adjacent to the Park and utilizes horse trails within the Park for customer trail rides. The ability to ride horses on a portion of Houchin's Ferry Road would enhance Mammoth Cave Horse Camp's access to some trails in the Park. To this end, it appears Mammoth Cave Horse Camp's owner has been engaged in discussions with the Park over an extended period regarding the use of Houchin's Ferry Road for horseback riding purposes (*See* Govt. Ex. 5-8, 13-17, 19-22). A county fiscal court has weighed in on the matter, pronouncing that horseback riding was a historical use of Houchin's Ferry Road (Govt. Ex. 18). So far, the Park has not conceded to Mammoth Cave Horse Camp's entreaties. While not a party to this action, Mammoth Cave Horse Camp has a

peripheral interest in a declaration that the regulation prohibiting horseback riding on Houchin's Ferry Road is unenforceable.

The United States has discussed in its Response the history of Mammoth Cave Horse Camp's efforts to secure authorization to permit horseback riding on Houchin's Ferry Road and the risks inherent in horses and automobiles sharing the road. The United States also suggests that the APA provides a means whereby Barnett and Mammoth Cave Horse Camp might pursue resolution of the request that Houchin's Ferry Road be used for horseback riding.

None of this was discussed in the substantive portion of this judgment because it bears no relevance in deciding the criminal charge. Regardless of the merits of a policy argument, "the Court does not make policy decisions." Geiger, LLC v. United States, 456 F. Supp. 2d 885, 889 (W.D. Ky. 2006). Consequently, it is not for the undersigned to decide if horseback riding should be permitted on Houchin's Ferry Road. Under the regulation, Horseback riding is prohibited on Houchin's Ferry Road. This Court may only decide if the prohibition is or is not enforceable.

November 25, 2019

H. Brent Brennenstuhl
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:        Counsel

11